IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PREMIUM PLUS PARTNERS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 1851 |
| | ) | |
| PETER J. DAVIS, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Massachusetts Financial Services Company's ("MFS") motion for summary judgment and on Defendant Goldman Sachs & Company's ("Goldman") motion for summary judgment. For the reasons stated below, we grant MFS's motion and we grant in part and deny in part Goldman's motion.

## BACKGROUND

Plaintiff Premium Partners, L.P. ("Premium") alleges that it held substantial short positions in 30-Year Treasury Options at 9:25 a.m. on October 31, 2001. Premium contends that Goldman and MFS paid Defendant Peter J. Davis ("Davis") to funnel to them nonpublic information that Davis discovered at a confidential

United States Department of Treasury ("Treasury Department") quarterly refunding meeting ("Meeting"), including a conference that took place between 9:00 a.m. and 9:25 a.m. on October 31, 2001. Davis allegedly learned during the Meeting that the Treasury Department would suspend the 30-Year Treasury Bond. Premium contends that when the information was released to the public, the demand for 30-Year Treasury Bonds increased and, in turn, the costs increased for investors that had to cover short positions in 30-Year Treasury Futures and 30-Year Treasury Bond Options.

According to Premium, after the Meeting at 9:35 a.m. Davis called Defendant John M. Youngdahl ("Youngdahl"), who works for Goldman, and at approximately 9:38 a.m. Davis called Defendant Steven E. Northern ("Northern"), who works for MFS. Davis allegedly informed Youngdahl and Northern that the Treasury Department was going to suspend the 30-Year Treasury Bond. Goldman then allegedly immediately purchased $84 million in 30-Year Treasury Bonds and significant amounts of 30-Year Treasury Futures. MFS also allegedly immediately purchased $65 million in 30-Year Treasury Bonds before public disclosures. Premium claims that Defendants manipulated the 30-Year Treasury Bond market, artificially influencing the price of 30-Year Treasury Bonds, Futures, and Options. That in turn allegedly required investors such as Premium to pay additional costs to cover short positions in 30-year Treasury Futures and Options.

Premium includes in its complaint Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.*, claims brought against Goldman and Youngdahl (Count I), CEA

claims brought against MFS and Northern (Count II), a CEA claim brought against Davis (Count III), Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, claims brought against all Defendants (Count IV), civil conspiracy claims brought against Goldman, Youngdahl, and Davis (Count V), civil conspiracy claims brought against MFS, Northern, and Davis (Count VI), Sherman Antitrust Act claims brought against Goldman, Youngdahl, and Davis (Count VII), and Sherman Antitrust Act claims brought against MFS, Northern, and Davis (Count VIII). The prior judge in this case granted in part and denied in part Defendants' motions to dismiss, dismissing all claims brought against Northern, and all state law claims (Counts IV-VI). The prior judge also dismissed all Sherman Act claims without prejudice. Premium indicates that the only remaining claims that it is pursuing are the CEA claims brought against Youngdahl, Goldman, and MFS. (4/11/08 Mot. Reinst. 4). Goldman and MFS have each moved for summary judgment on the remaining claims pending against them. Premium has also filed a motion for leave to conduct additional discovery and motions to strike.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and

3

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Bond Trading

      MFS and Goldman argue that they are entitled to summary judgment to the

extent that Premium's CEA claims are based upon trading in 30-Year Treasury Bonds. The Treasury Amendment, which limits the scope of the CEA, provides that, "[e]xcept as provided in paragraph (2)" of 7 U.S.C. § 2(c), "nothing" in the chapter of the Treasury Amendment that establishes the scope of the CEA applies to "an agreement, contract, or transaction in" certain categories, such as "government securities. . . ." 7 U.S.C. § 2(c)(1).

Premium does not deny that certain trades that are the basis for its claims against MFS and Goldman involved transactions in 30-Year Treasury Bonds, which are government securities. (Ans. GSJ 8). Premium instead points to 7 U.S.C. § 2(c)(2), which states that CEA claims can be based upon "an agreement, contract, or transaction described in paragraph (1) that is . . . a contract of sale of a commodity for future delivery (or an option on such a contract), or an option on a commodity (other than foreign currency or a security or a group or index of securities), that is executed or traded on an organized exchange. . . ." 7 U.S.C. § 2(c)(2). Premium argues that although 30-Year Treasury Bonds are government securities, they are traded on an organized exchange and can therefore be a basis for CEA liability. Although 7 U.S.C. § 2(c)(2) makes reference to trades on an organized exchange, and provides certain exceptions for when the CEA does apply, there is no specific language in that section that expressly nullifies the statement in 7 U.S.C. § 2(c)(1) that the CEA does not govern transactions in government securities. We are bound by the language in 7 U.S.C. § 2(c)(1), and will not interpret the section in a manner contrary to its plain meaning. Premium's position in emphasizing the applicability of

5

7 U.S.C. § 2(c)(2), would undermine the direct prohibitions provided in 7 U.S.C. § 2(c)(1). *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985)(referring to "'the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative'")(quoting *Colautti v. Franklin*, 439 U.S. 379, 392 (1979)). The reference in 7 U.S.C. § 2(c)(2) clearly was not intended to nullify the explicit exclusion of transactions in government securities.

Our conclusion is also consistent with the recognition by the United States Supreme Court that the Treasury Amendment serves as a substantive limitation on the scope of the CEA. *See Dunn v. Commodity Futures Trading Com'n*, 519 U.S. 465, 469, 475-76 (1997)(addressing transactions in foreign currencies and referring to one aspect of the Treasury Amendment as a "complete exclusion"); *see also Commodity Futures Trading Com'n v. Zelener*, 2003 WL 22284295, at *2 (N.D. Ill. 2003)(explaining that "[w]hen Congress created the CFTC in 1974 and expanded the statute's coverage to include non-agricultural commodities, it also enacted an exemption referred to as the 'Treasury Amendment,'" which "'limits [the statute's] coverage and the CFTC's jurisdiction to futures'")(quoting in part *Bank Brussels Lambert, S.A. v. Intermetals Corp.*, 779 F.Supp. 741, 750 (S.D.N.Y. 1991)). In addressing the Treasury Amendment, the United States Supreme Court has also warned courts not to treat the Treasury Amendment as "mere surplusage." *Dunn*, 519 U.S. at 472.

We also note that in *Commodity Futures Trading Com'n. v. Baragosh*, 278 F.3d 319 (4th Cir. 2002), the Fourth Circuit rejected a proposed interpretation of the

Treasury Amendment that would limit the scope of the Treasury Amendment stating that such an interpretation "would also frustrate the Amendment's very purpose." *Id.* at 327. The Court recognized that as to the foreign currency exemption in the Treasury Amendment, an overly broad interpretation of another "clause would sweep all, or almost all, such transactions back in." *Id.* Likewise, it would not make sense to read 7 U.S.C. § 2(c)(1) to exclude transactions involving government securities from the scope of the CEA and to read 7 U.S.C. § 2(c)(2) to provide a basis to include most of such transactions as a basis for CEA liability. Premium also points to certain non-controlling precedent in which Premium contends courts had the opportunity to adopt Goldman's position as to government securities, but instead the courts made no comment concerning the exemption of government securities from the CEA. (Ans. GSJ 9-10). However, such cases are not on point and do not address the issue before this court. The mere fact that such courts did not *sua sponte* address the issue now before the court does not mean that the courts implicitly agreed with Premium's position. Therefore, based on the above, the trades at issue in this case of 30-Year Treasury Bonds cannot be the basis for liability under the CEA.

II. MFS Trades

MFS contends that the only trades that it is alleged to have made are in 30-Year Treasury Bonds and seeks summary judgment on all of the claims brought against MFS.

7

A. Bond Trades

In the complaint Premium only alleges that MFS made certain trades at the time in question in 30-Year Treasury Bonds. (Compl. Par. 54). To the extent that the CEA claim brought against MFS is based on the trade of 30-Year Treasury Bonds, we grant MFS' motion for summary judgment.

B. Other Trades or Purchases

Although MFS argues in its motion for summary judgment that the only trades at issue in this case for MFS were in 30-Year Treasury Bonds, Premium does point to evidence contending that MFS may have violated the CEA when it made a certain trade in 30-Year Futures Contracts. Specifically, Premium points to evidence indicating that when Davis allegedly gave the inside information to Northern, Northern spoke to Matt Ryan ("Ryan"), who also works for MFS, and Ryan then purchased 30-Year Treasury Futures. (SAF MSJ Par. 19, 21). Premium contends that it has not been allowed to conduct sufficient discovery to assess whether Ryan's futures trades were related to Davis' improper conduct. However, Premium itself acknowledges that the purchase by Ryan was only for five 30-Year Futures Contracts, totaling $500,000. (Ans. MSJ 5). Even if the purchase was related to Davis' improper conduct, no reasonable jury could conclude that such a minimal purchase was sufficient to manipulate the entire 30-Year Futures market. Premium has not provided any basis other than speculation to show that other trading or purchases by MFS could be a basis for the CEA claim, and Premium has not shown

8

justification for conducting discovery on this issue. Therefore, based on the above, we grant MFS's motion for summary judgment in its entirety.

III. Goldman's Trades

Goldman seeks summary judgment on the CEA claim brought against it.

A. Bond Trades

Premium bases its CEA claim against Goldman in part upon certain trades in 30-Year Treasury Bonds. As explained above, such transactions cannot serve as a basis for CEA liability. Therefore, we grant Goldman's motion for summary judgment to the extent that the CEA claim is based upon trades in 30-Year Treasury Bonds.

B. Other Trades or Purchases

Goldman also seeks summary judgment to the extent that the CEA claim brought against Goldman is based on trading in 30-Year Treasury Futures. In the complaint, unlike with MFS, Premium contends that Goldman used Davis' alleged tip to immediately purchase 30-Year Treasury Futures. (Compl. Par. 48). Premium contends that through such purchases Goldman manipulated or attempted to manipulate the price of a commodity in violation of 7 U.S.C. § 13(a)(2). Premium seeks a finding of civil liability against Goldman pursuant to 7 U.S.C. § 25(a)(1). Goldman argues that there is not sufficient evidence showing that it had the ability to

9

manipulate the market or sufficient evidence that shows that Goldman actually did in fact cause the price of 30-Year Treasury Futures to be artificially inflated at the time in question.

### 1. Identification of All Alleged Misconduct

Premium argues that it should not be required to address the factual issues presented in Goldman's motion for summary judgment concerning Goldman's alleged misconduct until Premium is given a chance to conduct discovery. Goldman's contentions concerning precisely which trades were connected to Davis' alleged tips are based on the limited information in the record. Premium contends, for example, that Goldman has only provided information to Premium concerning trades at one of Goldman's departments, the Treasury desk, and Premium desires to seek discovery at other departments that could have acted on Davis' tip and made trades at the time in question. (Ans. GSJ 13).

Goldman does not contest Premium's assertion that the prior judge in this case did not authorize the parties to conduct certain merits discovery. (G Reply/Ans. Mot Disc. 20-21). Premium also points out, and the docket in this case confirms, that while the parties were conducting class discovery, Premium sought discovery on some of the key issues on the merits in this case and filed a motion to compel. The motion to compel was denied by the magistrate judge, and the prior judge in this case agreed with the magistrate judge, indicating that the discovery sought was not needed at that juncture for class discovery and appeared to concern "merits-only issues."

(10/31/06 OR). The fact that the prior judge made such a ruling also supports Premium's argument that the parties anticipated further discovery on the merits. When the undersigned judge received this case, the record reflected that one of the Defendants had filed a dispositive motion. In light of the long history of this case, the court provided the parties with an additional opportunity to file dispositive motions to see if the case could be resolved without the additional costs of discovery. In part, the dispositive motions have narrowed the issues since all claims against MFS have been disposed of and the bond trade issue has been resolved as to the claim brought against Goldman. However, it is apparent that at least some merits discovery is warranted. Premium will be allowed to conduct reasonable discovery on the remaining issues.

 2. Time of Public Awareness

Goldman's contention that the public was made aware of the insider information at 9:43 a.m. on the day in question, is based solely upon evidence indicating that an unauthorized disclosure temporarily occurred on the Treasury Department website. Goldman's only source for those facts is a Treasury Report ("Report") that addressed an investigation into the alleged website disclosure. (GSJ 3). However, it is not clear based on the current record, what information was presented on the website or if there was indeed a public disclosure. There is a sufficient basis to conduct discovery on this issue.

 Premium will be given the opportunity to conduct discovery on the merits of

the CEA claims relating to the 30-Year Treasury Futures. Such discovery, however, should be narrowly tailored to address the relevant issues and should not be utilized by Premium to engage in a fishing expedition. Such discovery should also be limited, keeping in mind that Premium has already been given the opportunity to conduct class discovery in this case. All fact discovery must be completed by September 30, 2008. Expert discovery must be completed by October 29, 2008. Dispositive motions must be filed by November 24, 2008. Answers to dispositive motions are due by December 8, 2008, and replies are due by December 15, 2008. Therefore, Goldman's motion for summary judgment, to the extent that it is based on its trades in futures, is denied without prejudice. We also grant Premium's motion for leave to conduct appropriate discovery. Finally, we deny without prejudice Premium's motions to strike since they relate to Goldman's motion for summary judgment, which has been denied in part without prejudice.

## CONCLUSION

Based on the foregoing analysis, we grant MFS' motion for summary judgment in its entirety and we grant and Goldman's motion for summary judgment to the extent that the CEA claim brought against Goldman is based on the trades of 30-Year Treasury Bonds. We deny without prejudice Goldman's motion for summary judgment to the extent that the CEA claim is based upon alleged purchases of 30-Year Treasury Futures. We also grant Premium's motion for leave to conduct appropriate discovery and deny without prejudice Premium's motions to strike.

 

                                                    _____
                                                    Samuel Der-Yeghiayan
                                                    United States District Court Judge

Dated: July 30, 2008