# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| PREMIUM PLUS PARTNERS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 1851 |
| | ) | |
| PETER J. DAVIS, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Premium Partners, L.P.'s ("Premium") renewed motion for class certification. For the reasons stated below, we deny the motion.

## BACKGROUND

Premium alleges that it held substantial short positions in 30-Year Treasury Options at 9:25 a.m. on October 31, 2001. Premium contends that Defendant Goldman, Sachs & Company ("Goldman") and Defendant Massachusetts Financial Services Company ("MFS") paid Defendant Peter J. Davis ("Davis") to funnel to them nonpublic information that Davis discovered at a confidential United States Department of Treasury ("Treasury Department") quarterly refunding meeting

1

("Meeting"), including a conference that took place between 9:00 a.m. and 9:25 a.m. on October 31, 2001. Davis allegedly learned during the Meeting that the Treasury Department would suspend the 30-Year Treasury Bond. Premium contends that when the information was released to the public, the demand for 30-Year Treasury Bonds increased and, in turn, the costs increased for investors that had to cover short positions in 30-Year Treasury Futures and 30-Year Treasury Bond Options.

According to Premium, after the Meeting at 9:35 a.m., Davis called Defendant John M. Youngdahl ("Youngdahl"), who works for Goldman, and at approximately 9:38 a.m., Davis called Defendant Steven E. Northern ("Northern"), who works for MFS. Davis allegedly informed Youngdahl and Northern that the Treasury Department was going to suspend the 30-Year Treasury Bond. Goldman then allegedly immediately purchased $84 million in 30-Year Treasury Bonds and significant amounts of 30-Year Treasury Futures. MFS also allegedly immediately purchased $65 million in 30-Year Treasury Bonds before public disclosures. Premium claims that Defendants manipulated the 30-Year Treasury Bond market, artificially influencing the price of 30-Year Treasury Bonds, Futures, and Options. That in turn allegedly required investors such as Premium to pay additional costs to cover short positions in 30-Year Treasury Futures and Options.

Premium includes in its complaint Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.*, claims brought against Goldman and Youngdahl (Count I), CEA claims brought against MFS and Northern (Count II), a CEA claim brought against Davis (Count III), Illinois Consumer Fraud and Deceptive Business Practices Act,

815 ILCS 505/1 *et seq.*, claims brought against all Defendants (Count IV), civil conspiracy claims brought against Goldman, Youngdahl, and Davis (Count V), civil conspiracy claims brought against MFS, Northern, and Davis (Count VI), Sherman Antitrust Act claims brought against Goldman, Youngdahl, and Davis (Count VII), and Sherman Antitrust Act claims brought against MFS, Northern, and Davis (Count VIII). The prior judge in this case granted in part and denied in part Defendants' motions to dismiss, dismissing all claims brought against Northern, and all state law claims (Counts IV-VI). The prior judge also dismissed all Sherman Act claims without prejudice.

On July 30, 2008, we granted MFS's motion for summary judgment in its entirety, and we granted Goldman's motion for summary judgment to the extent that the CEA claim brought against Goldman is based on the trades of 30-Year Treasury Bonds. We denied without prejudice Goldman's motion for summary judgment to the extent that the CEA claim is based upon alleged purchases of 30-Year Treasury Futures. We also granted Premium's motion for leave to conduct appropriate discovery and denied without prejudice Premium's motions to strike. Premium now requests that the court certify a class.

## LEGAL STANDARD

A plaintiff seeking class certification must first satisfy the requirements of Federal Rule of Civil Procedure 23(a) ("Rule 23(a)"). Rule 23(a) provides the following: "[o]ne or more members of a class may sue or be sued as representative

3

parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Failure by a plaintiff to satisfy any one of the above requirements in Rule 23(a) precludes a court from granting the certification of a class. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). If a plaintiff is able to satisfy all of the requirements of Rule 23(a), the district court must then determine whether a plaintiff's action can be maintained as a class action by meeting one of the requirements of Federal Rule of Civil Procedure 23(b) ("Rule 23(b)"). *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)(stating that "[t]he district court may certify a class of plaintiffs if the putative class satisfies all four requirements of Federal Rule of Civil Procedure 23(a)-numerosity, commonality, typicality, and adequacy of representation-and any one of the conditions of Rule 23(b)"); *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2001)(explaining Rule 23(b)). In order to determine whether a class should be certified, a court may make any "factual and legal inquiries . . . necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001). A court need not accept a plaintiff's assertions as conclusive, but may receive any evidence necessary to make a decision on class certification. *See id.* (explaining why the court accepts a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) but does not when

ruling on class certification motions under Rule 23). A plaintiff seeking the certification of a class bears the burden of showing that a class should be certified. *Oshana*, 472 F.3d at 513.

## DISCUSSION

Premium contends that the court should certify a class ("Proposed Class") that consists of "[a]ll individuals and entities who held short positions in 30–Year Treasury Futures or 30-Year Treasury Options as of 9:25 a.m. (EST) on October 31, 2001 and who covered such short positions at any time thereafter." (Ren. Mot. Cert. 1).

### I. Scope of Class

Defendants argue that the scope of the Proposed Class is overbroad and speculative since it is an open-ended class. A plaintiff seeking class certification bears the burden of proving "that the class is indeed identifiable as a class." *Oshana*, 472 F.3d at 513. According to Premium's own allegations, there was a window of less than ten minutes, when Defendants' alleged misconduct could have impacted the 30-Year Treasury Futures market. Premium has not provided a sufficient explanation for including within the Proposed Class any investors that held their positions "as of 9:25 a.m." on October 31, 2001 and covered their positions "at any time thereafter." (Ren. Mot. Cert. 1). In theory, this would include investors that covered their positions days or months later. Premium has not shown that such

transactions, which occurred after a myriad of other intervening events and fluctuations in the market, could have been impacted by Defendants' alleged misconduct. In particular, it would be extremely difficult to assess whether Defendants' alleged misconduct in any way affected the losses or gains for investors after the Treasury Department made its public disclosure and the prices immediately began to rise as a result. Thus, we conclude that the Proposed Class is overbroad and that Premium seeks to include class members that could base their claims for damages on nothing more than speculation. *See Oshana*, 472 F.3d at 513 (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977) for the proposition that "class definitions must be definite enough that the class can be ascertained").

Premium also argues that the class is not open-ended since Chicago Board of Trade specifications would make June 22, 2002, the last possible end date for the class period due to deadlines for covering short positions. (Reply Cert. 22). We first note that Premium is improperly attempting to indirectly amend the Proposed Class in its reply brief. A party cannot present new arguments or positions in a reply brief and thereby deprive the opposing party an opportunity to respond. *See Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997)(explaining that a party may not introduce novel arguments in its reply brief). If Premium believes that the class should be limited to those covering short positions by June 22, 2002, then Premium should have clearly provided such information as part of the Proposed Class. Only after Defendants have pointed to the flaws in the scope of the Proposed Class did

6

Premium attempt to reference hidden intentions to limit the scope. Also, even if Premium is correct as to the June 22, 2002 date, the scope of the class would be expansive. The alleged misconduct occurred on October 31, 2001, and any transactions occurring within this newly suggested class could have occurred over six months later. Premium has not provided any reasonable basis by which the end results of such transactions could be linked to Defendants' alleged misconduct or by which damages could be reasonably determined. Premium has therefore failed to request a proper class.

We also note that an overbroad class can be divided into sub classes. *See, e.g., Culver v. City of Milwaukee*, 277 F.3d 908, 912 (7th Cir. 2002)(stating that "the fact that a class is overbroad and should be divided into subclasses is not in itself a reason for refusing to certify the case as a class action"). However, in the instant action, Premium has not shown that the Proposed Class should be divided into subclasses or provided any suggestion for potential subclasses that would suffice to cover the claims that Premium seeks to bring on behalf of the Proposed Class. Premium has therefore, failed to properly delineate a proposed class that can be approved by this court.


## II. Rule 23(a) Requirements

Premium argues that it has satisfied all of the requirements of Rule 23(a). Premium asserts that the numerosity requirement is met. Premium indicates that it

estimates that the putative class members "number in the tens of thousands or more." (Ren. Mot. Cert. 9). Defendants do not challenge that estimation, and we are satisfied that the numerosity requirement is met. Premium also contends that there are questions of law or fact common to the Proposed Class, such as whether Defendants violated the CEA by artificially inflating the 30-Year Treasury Futures market. Defendants do not challenge this point, and we agree that the commonality factor is met in this case.

## A. Typicality

Defendants argue that Premium has not shown that the typicality requirement is met in this case. A plaintiff's claim is deemed to be typical of proposed class members if the claim "'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)(quoting H. Newberg, *Class Actions* § 1115(b) at 185 (1977))(stating that "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members"). Defendants contend that investors in the Treasury market use a variety of trading strategies. We agree that this will create differences for each Proposed Class member's claim in this case. At issue will be each Proposed Class member's trading strategy, which must be considered in evaluating whether Defendants'

alleged misconduct caused financial loss to the Proposed Class member and, if so, the extent of the loss. Premium attempts to oversimplify this case when it argues that all investors holding certain positions on the day in question are automatically entitled to damages. Rather, the unique circumstances of each investor would be relevant. We agree with Defendants that the instant action does not involve a small, discrete commodities market and that in light of the size, scope, and complexity of the Treasury market, Premium's claim cannot be considered typical of the claims of the Proposed Class. Although Premium attempts to simplify this case by arguing that the many variations in the facts can be addressed without difficulty, Premium has not pointed to a methodology or formula that would satisfactorily resolve the many differences among the claims of the Proposed Class members in an efficient manner. *See, e.g., Centurions v. Ferruzzi Trading Intern., S.A.*, 1994 WL 114860, at *1, *8 (N.D. Ill. 1993)(finding in a market manipulation case that the plaintiff failed to present a satisfactory uniform damages assessment in light of differences between proposed class members' claims). Premium cites in support of its motion *In re Soybean Futures Litigation*, 892 F. Supp. 1025 (N.D. Ill. 1995). (Reply Cert. 25). However, the instant action is distinguishable since, unlike the instant action, the case in *Soybean Futures* involved a scenario where there was only one underlying commodity involved and the defendants in the case possessed a large percentage of the holdings of long positions in soybean contracts. *Id.* at 1034-40. In the instant action, Defendants are accused of purchasing only a minute portion of the total 30-Year Treasury Futures market and the period in question was of a short duration. In

addition, Defendants have shown that there is more than one underlying commodity at issue in this case. Defendants have shown that there was an array of differing instruments available in October 2001, that will need to be considered in this case. Premium has not pointed to any controlling precedent indicating that such variations in trading strategies can be efficiently handled in a class action. Thus, Premium has not shown that the typicality requirement is met in this case.


B.  Adequacy of Representation

Defendants argue that Premium will not adequately represent the interests of the Proposed Class members. In determining whether a plaintiff can adequately represent the interests of the proposed class, the court should consider "'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (quoting in part *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986)). Defendants first point out that, although Premium seeks to vindicate the interests of investors that were harmed during the eight minute window when Defendants allegedly artificially inflated the 30-Year Treasury Futures market, the record indicates that Premium itself did not actually cover its positions until well after the Treasury Department made an official public announcement. Premium thus has an incentive to minimize the significance of the harm that could have been caused to investors that traded during the precise

eight-minute window when Defendants' misconduct could most easily have impacted the market.

Premium also has conflicts with the positions of other Proposed Class members. Defendants point out that there is evidence that shows that Premium had its own unique trading strategy. Premium, however, seeks to include an open-ended class that conceivably utilized a variety of differing trading strategies. Defendants have in fact presented evidence that shows that it is unlikely that any two traders in the Treasury market utilized the exact same trading strategies on the day in question. We agree with Defendants that Premium has an incentive to present arguments concerning its trading strategy that could minimize the damages for other Proposed Class members. Premium, in pursuing a course most beneficial to itself, could in fact present arguments that would undermine the claims of other class members. *See Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985)(stating that "[u]nder Rule 23, class plaintiffs cannot fairly and adequately protect the interests of the class they seek to represent if they present a claim about which members of the class have antagonistic or conflicting interests").

A class representative also owes a fiduciary duty to the class members. *Culver*, 277 F.3d at 913 (stating that if a proposed class representative "is not an adequate representative of the interests of the class as a whole, realism requires that certification be denied"); *see also Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 880 (7th Cir. 2000)(stating that a class representative owes a fiduciary duty

to the class members to act in the best interest of the members). Premium, with its unique position and conflicts with Proposed Class members, cannot meet its fiduciary obligations for the entire class. *See Retired Chicago Police Ass'n*, 7 F.3d at 588 (stating that "'[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims'")(quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992)). Therefore, we conclude that Premium has not shown that it can adequately represent the interests of the class. We also note that should Defendants attempt to reach a class settlement in this case, such conflicts could hinder a proper settlement. *See Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002)(stating that "[c]onflicts of interest can create serious problems for class action settlements"). Thus, based on the above, Premium has not shown that it can adequately represent the class, and Premium has not shown that it can meet the requirements of Rule 23(a).

III.  Rule 23(b) Requirements

Defendants also argue that Premium has not shown that it can meet any of the Rule 23(b) requirements. Premium argues that it satisfies the requirements of Rule 23(b)(3), (Mem. Mot. 12), which provides the following:

A class action may be maintained if Rule 23(a) is satisfied and if: . . .

> the court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a
> class action is superior to other available methods for fairly and efficiently

adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Defendants argue that the questions of law or fact that are common to the Proposed Class members do not predominate over the differences among the Proposed Class members. The common thread of the Proposed Class members is that they all held positions in the relevant Treasury market during a certain period. Beyond that commonality, however, is a myriad of variables that are attributable to each Proposed Class member's claim. As explained above, the many potential trading strategies could potentially raise many different scenarios for the Proposed Class members' claims. This case does not involve a scenario where Defendants acquired, held, and liquidated significant positions over a substantial period of time. Rather, this case is focused on a minute eight-minute window of opportunity and possibly an indeterminable time thereafter where investors engaged in a variety of trading strategies, responding to public announcements by the Treasury Department and responding to fluctuations in the market that could be attributed to many factors. Thus, this case does not lend itself to the uniform manner in which Premium proposes to resolve this case as a class action.

In addition, the Seventh Circuit has indicated that "Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual

suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Premium has not shown that any portion of the investors allegedly harmed by Defendants suffered only minimal loses. Rather, Premium argues that investors, such as itself, lost significant amounts of money due to Defendants' alleged misconduct. (Ren. Mot. Cert. 1); *Murray*, 434 F.3d at 953 (stating that Rule 23(b)(3) is applicable where there will be "a fusillade of small-stakes claims"). Thus, as indicated above, Premium has not presented a properly delineated proposed class and has not shown that the requirements of Rule 23(a) or 23(b) are satisfied in this case. We thus conclude, based upon the record before us that it would not be appropriate to certify the Proposed Class. *See Retired Chicago Police Ass'n*, 7 F.3d at 596 (stating that "a district court has broad discretion to determine whether certification of a class is appropriate"); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 306 (7th Cir. 1985)(stating that "[t]he certification of a class is within the sound discretion of the trial court"). Therefore, we deny Premium's motion for class certification.

**CONCLUSION**

Based on the foregoing analysis, we deny Premium's motion for class certification.

_____

Samuel Der-Yeghiayan
United States District Court Judge

Dated:  August 22, 2008